IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

## STATE OF TENNESSEE V. LARRY KEITH HUDDLE

**Direct Appeal from the Criminal Court for Sullivan County
Nos. S40,505, S41,302-305     Phyllis H. Miller, Judge**

---

**No. E1999-00250-CCA-R3-CD - Decided**

---

The defendant, Larry Keith Huddle, appeals from the trial court's order revoking his community corrections sentence. He received an effective eight-year sentence for aggravated sexual battery and four counts of passing a worthless check. He argues that the revocation, based upon his use of alcohol and unauthorized transportation from work, is unsupported by the evidence. We hold that the evidence supports the trial court's finding that the defendant used alcohol and violated the conditions of his behavior contract by having an unauthorized friend drive him home from work.

**Tenn. R. App. P.  3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIPTON, J., delivered the opinion of the court, in which WADE, P.J., and WITT, J., joined.

Thomas McKinney, Jr., Kingsport, Tennessee, for the appellant, Larry Keith Huddle.

Paul G. Summers, Attorney General & Reporter; Patricia C. Kussmann, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Robert H. Montgomery, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Larry Keith Huddle, appeals as of right from the trial court's revocation of his community corrections sentence. He was convicted following guilty pleas to aggravated sexual battery, a Class C felony, and four counts of passing a worthless check, a Class A misdemeanor. He received an effective sentence of eight years and was ordered to serve the sentence in community corrections at the John R. Hay House (Hay House). The trial court revoked the defendant's community corrections sentence, finding that the defendant consumed alcohol and rode home from work with an unauthorized person, a violation of Hay House rules. The defendant contends that the trial court erred in revoking community corrections because the evidence does not show that he used alcohol or that the rule requiring him to receive authorization to ride with someone other than his father or aunt applied to him after he moved out of Hay House and into nonresidential treatment. The state contends that the trial court properly revoked the community corrections sentence.

At the revocation hearing, Mt. Carmel Police Officer Kevin Ewing testified that on April 27, 1999, at 12:24 a.m., he was dispatched to a car accident in which the defendant was a passenger in a car driven by Michael Ford. When Officer Ewing reached the scene four minutes later, Mr. Ford was sitting in the driver's seat, and the defendant was standing outside the car. Officer Ewing described Mr. Ford as too intoxicated to be driving. He said that Mr. Ford was disoriented, belligerent and uncooperative. He said that Mr. Ford smelled strongly of alcohol, staggered, and refused to take a breath test. He said that Mr. Ford admitted drinking tequila. He also testified that Mr. Ford had two plastic bags with small amounts of marijuana residue and rolling papers on his person.

Officer Ewing testified that he spoke with the defendant after determining that he was not seriously injured in the accident. He said that the defendant had a slight odor of alcohol about him and that he asked the defendant if he had been drinking. He said that the defendant initially replied that he had not but that when he asked the defendant again, the defendant stated, "well, yeah, I've had a couple of beers, but I'm not intoxicated or nothing like that." Officer Ewing said that he did not find any alcohol inside the vehicle. He said that the accident occurred about five minutes from the defendant's aunt's house, where the defendant was living.

Todd Thompson, a case officer at Hay House, testified that when the defendant was first admitted as a resident, the defendant signed a behavior contract and a court order specifying and acknowledging the conditions of his release into Hay House. According to Rule 12 of the order, the defendant was to follow all Hay House rules. Rule 3 of the behavior contract provides that the defendant is not to use or possess any form of intoxicants or drugs. On February 19, 1999, the defendant signed a statement setting forth additional rules. The statement provides that the defendant can ride only with his father or his aunt and that Hay House staff must approve the people with whom the defendant rides to and from work.

Mr. Thompson testified that the defendant was released into Phase II, nonresidential treatment on April 4, 1999. The defendant signed a Phase II Agreement which was admitted into evidence. Rule 7 of the agreement provides that the defendant is to abide by the Hay House behavior contract as if he were still a resident. Mr. Thompson testified that upon the defendant's release into nonresidential treatment, the defendant was not allowed to ride with anyone but his aunt or father. Mr. Thompson testified that the defendant called the Hay House on April 26, 1999, at 5:00 p.m. to report car trouble.

Kenneth Whitten, a residential manager at Hay House, testified that he spoke with the defendant when he called on April 26 at 5:00 p.m. to report that he had car trouble but was going to work. He said that the defendant did not request permission to ride with an unauthorized person and that he did not give the defendant permission. He said that the defendant was allowed to ride only with his aunt or father and that he assumed the defendant's aunt would take him to work.

Penny Hawk, a manager at Ryan's Steakhouse, testified that the defendant worked at Ryan's and that on April 26, the defendant clocked out at 10:30 p.m. He then went to the break area to wait on a ride. She said that she unlocked the door for the defendant to leave at 11:40 p.m. She stated

that Ryan's does not serve alcohol and that she saw no indication that the defendant had anything to drink while at work. She said that the defendant asked her to remember what time he left that night.

Michael Ford testified that early in the day on April 26, the defendant asked him for a ride home from work. He said that he forgot and was late picking up the defendant. He said that he did not have any alcohol in his car when he picked up the defendant at 11:40 p.m. He said that on the way to the defendant's aunt's house, he stopped for gasoline, and the defendant paid him three dollars for the gas. He denied buying alcohol or consuming any alcohol while he took the defendant home. He admitted that he drank nine or ten shots of tequila earlier at a party.

Kay Webb, the defendant's aunt, testified that the defendant lived with her following his release from Hay House. She said that her house was 2.7 miles from the accident. She said that she had been transporting the defendant to and from work during the week before the accident because his car was not working. She said that on the 26th, she took the defendant to work but that when he called her on his break at about 9:00 p.m., she told him she was sick and could not drive. She said that the defendant called back a few minutes later and told her that Mr. Ford would take him home. She said that she helped clean the defendant after the wreck and that he did not smell of alcohol.

The defendant's father testified that he simulated the defendant's trip home from Ryan's on the 26th. He said that on a Monday at 11:40 p.m., he drove from Ryan's to the gas station, bought three dollars worth of gas, then drove to the accident scene. He said it took him twenty-nine minutes. He said that the defendant could not reach him on the night of the accident to ask for a ride because he had given the defendant his pager. He admitted that he was home that night and that his telephone was working, but the defendant never called.

The defendant testified that he had been driving himself to work until his car stopped running on the 26th. He said that he arranged for his aunt to take him to work and for Mr. Ford to take him home. He said that he spoke with Mr. Whitten at Hay House, who told him to have his aunt or a friend take him to work. He said that other people had taken him to work previously with Hay House approval. He said that after he clocked out of work at 10:30 p.m., he waited on Mr. Ford until 11:40. He said that he tried to call his father and his aunt but that neither answered. He denied using alcohol that night and stated that he has Crohn's disease, which is inflamed by alcohol. He said that when Officer Ewing asked him if had been drinking, he replied that he "wouldn't drink the first beer or two" because it would get him in trouble. He admitted that he used to be a heavy drinker. He said that he arranged during the day for Mr. Ford to pick him up from work on the 26th but that he did not tell his aunt until he called her from work at 9:00 p.m. He said that he did not consider the original Hay House rules to be in effect once he was placed in nonresidential treatment.

The trial court found that the defendant violated the terms of his community corrections sentence. The trial court accredited the testimony of Officer Ewing and disbelieved the defendant. It stated:

> I find that you violated community corrections, and that you have consumed alcoholic beverages, and you admitted even though you denied today under oath, I

don't believe you under oath today. I find that you violated the rules of community corrections by having somebody who was not approved, pick you up at Ryan's and drive you home. Your testimony about calling your aunt, not being able to get in touch with your father, not being able to get your aunt to answer the phone. No answer at either one of those places. I find that that is not credible.

Trial courts have authority to revoke a community corrections sentence upon a finding, by a preponderance of the evidence, that the defendant has violated the conditions of the sentence. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); Tenn. Code Ann. § 40-35-311. If the evidence of a violation is sufficient to enable the trial court to make a conscientious and intelligent judgment regarding revocation, that judgment will not be disturbed on appeal. Id.

The defendant first contends that the evidence is insufficient to support a finding that he consumed alcohol. He argues that the evidence shows that he did not drink anything while at work, that he and Mr. Ford went straight home from Ryan's, stopping only for gas, and that no alcoholic beverages were found in Mr. Ford's car. However, the trial court accredited Officer Ewing's testimony that the defendant smelled faintly of alcohol and admitted having one or two beers. The defendant's use of alcohol was proven.

The defendant further contends that the trial court erred by finding that he violated Hay House rules by riding with an unauthorized person. He argues that he did not believe that the statement he signed on February 19, which contains the condition that the defendant seek approval before riding to and from work with persons other than his aunt or father, continued to apply once he achieved nonresident status. He further contends that he did advise Mr. Whitten on April 26 that he would need a friend or his aunt to drive him to and from work.

Although the defendant contends he did not believe that the Hay House behavior conditions applied to him when he entered into nonresidential status, the agreement he signed upon entering into Phase II specifically provided that he was to abide by Hay House rules as if he were still a resident. One of the rules, as provided in the statement he signed on February 19, was that he receive approval before riding to and from work with anyone other than his aunt or father. The defendant argues that his belief that the rules in the February statement no longer applied is reasonable in light of the fact that he was allowed to drive himself to work as a nonresident, which he says conflicts with the rule in the statement that he cannot possess a car. However, the rule actually provides that he cannot have a car during residence. Obviously, the terms of the rule caused its application to cease once the defendant entered nonresidential treatment. The rule requiring authorization of transportation, however, contains no such limitation. The defendant's contention that he reported his need to ride with a friend is refuted by Mr. Whitten's testimony that the defendant made no such request. The trial court disbelieved the defendant, and the record supports its finding of a violation.

We conclude that material evidence exists in the record to justify the trial court's revocation decision. In consideration of the foregoing, we affirm the trial court's order revoking the defendant's

community corrections sentence and sentencing the defendant to eight years in the custody of the Department of Correction.